UNITED STATES DISTRICT COURT  O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LAMBERTO ROMAN-SALGADO | § | |
| | § | |
|  Petitioner | § | |
| VS. | § | CIVIL ACTION NO. L-09-56 |
| | § | CRIMINAL NO. L-06-CR-1222-1 |
| UNITED STATES OF AMERICA | § | |

**OPINION & ORDER**

Pending before the Court is Petitioner Lamberto Roman-Salgado's ("Roman") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. [Dkt. No. 1].[1] After careful consideration of the motion, supporting memorandum, and governing law, the Court concludes that Roman's motion should be **DISMISSED with prejudice.**

**I. BACKGROUND**

On August 29, 2006, Roman was indicted on three counts including: (1) conspiracy with the intent to distribute a quantity in excess of five kilograms of cocaine; (2) possession with intent to distribute a quantity in excess of five kilograms of cocaine; and (3) importation into the United States of a Schedule II controlled substance. [Cr. Dkt. No. 7]. Roman subsequently entered into a plea agreement with the Government, and in exchange for his cooperation, Counts One and Three were dismissed. [Cr. Dkt. No. 18]. Roman was sentenced to 120 months imprisonment, five years of supervised release, and also ordered that he pay a $100 special assessment fee. [Min. Entry 2/01/2006; Cr. Dkt. No. 39]. After judgment was entered, Roman filed a Notice of Appeal. [Cr. Dkt. No. 34]. On November 15, 2007, the Fifth Circuit affirmed

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in case number 5:09-cv-56. Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:06-cr-1222.

in part and remanded for resentencing to determine whether Roman was entitled to safety-valve relief. [Cr. Dkt. No. 52].

During Roman's resentencing hearing, the Court heard testimony from Roman and Immigration and Customs Enforcement Agent John H. Hardwich in order to determine Roman's truthfulness during his safety-valve debriefing. [Cr. Dkt. No. 77]. Agent Hardwich testified that he conducted an initial interview with Roman following Roman's apprehension. [*Id*. at 9]. During this initial interview, Roman stated that he was given cell phones to communicate with co-conspirators, and that a woman named Miranda, who was part of the conspiracy, had met him in person and given him one of the cell phones. [*Id*. at 9-13]. Agent Hardwich also testified that a safety-vale interview occurred, and that during such interview, "[Roman] could not remember who (sic) in these phones or what numbers belonged to the coconspirators (sic)." [*Id*.]. While Agent Hardwich inquired as to Miranda's characteristics and appearance, Roman provided no information or other details about her. [*Id*. at 12-13].

Next, the Court heard testimony from Roman. He testified that, when Agent Hardwich inquired as to the identity of Miranda during the safety-valve interview, he admitted that he did not want to talk about her. [*Id*. at 22]. He explained that he was dating the woman he had previously identified as Miranda, that she had indeed given him the phone, but that he did not want to discuss her because he was married and did not want his wife to find out. [*Id*. at 22-23]. After considering the testimony presented, the Court concluded that Roman was not completely truthful at the time of his safety-valve interview, given that he would not discuss Miranda after indicating, during the initial interview, that she had given him a cell phone to contact other co-conspirators. [*Id*. at 29-30]. The Court thus denied Roman's request for safety-valve relief. [*Id*. at 30].

Thereafter, Roman was re-sentenced to 120 months of imprisonment, a five-year term of supervised release, and also ordered to pay a $100 special assessment fee. [Min. Entry 3/13/2008; Cr. Dkt. No. 70]. Roman then appealed to the Fifth Circuit, which affirmed the new sentence. [Cr. Dkt. No. 86]. Roman then filed for a writ of certiorari to the United States Supreme Court, which was denied on March 2, 2009. [Cr. Dkt. No. 87].

On May 4, 2009, Roman filed this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28, United States Code § 2255. [Cr. Dkt. No. 88]. Roman alleges that he received ineffective assistance of counsel at the resentencing hearing. [Cr. Dkt. No. 51, 52]. Roman claims that his defense counsel was ineffective for failing to investigate and properly argue mitigating evidence regarding the safety-valve reduction. [Dkt. No. 2 at 6]. He also contends that his counsel was ineffective for failing to impeach a government witness. [*Id.* at 11]. Roman also asserts that his counsel was ineffective for failing to object to misleading testimony and investigate facts. [*Id.* at 15]. Finally, Roman claims that counsel's cumulative errors and omissions deprived him of due process. [*Id.* at 17].

## II.   DISCUSSION

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Generally, § 2255 claims fall under four categories: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255 (2006).

### A.     Ineffective Assistance of Counsel

Ineffective assistance of counsel is a violation of the Sixth Amendment right to counsel, a claim of constitutional proportion permitted under 8 U.S.C. § 2255.  Under the pertinent two-prong test, Roman must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that Roman suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A reviewing court need not consider either prong of the test in any particular order.  *Id.* at 697.  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and adequate assistance was rendered.  *Id.* at 689-90.  All significant decisions are presumed to be made "in the exercise of reasonable professional judgment."  *Id*.  There are few specific instances where a presumption of prejudice exists, but "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."  *Id*. at 692-93.

#### 1.     Failure to Investigate/Present Evidence

Roman claims that he received ineffective assistance because counsel failed to investigate and present certain facts related to the cell phone purportedly given to him by Miranda, the woman who he identified, during his initial interview, as a member of the conspiracy.  [Dkt. No. 2 at 7, 15].  It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *United States v. Drones*, 218 F.3d 496, 500 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 690-91).  In order to establish ineffectiveness of counsel for a failure to investigate, "[a] petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the [hearing]."  *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

Here, Roman contends that counsel failed to conduct an adequate factual investigation. [Cr. Dkt. No. 77 at 7]. In support of this claim, Roman appears to suggest that counsel did not communicate with him for a sufficient amount of time. [Dkt. No. 2 at 7]. Specifically, he avers that counsel communicated with him for 20 minutes the day before the resentencing hearing and for 15 minutes the day of the resentencing hearing. However, "[b]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) (per curiam) (citing *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979)). The Court therefore turns to determine whether counsel failed to investigate any facts that would have changed the outcome of the resentencing hearing.

Roman asserts that counsel should have elicited several facts from him before the resentencing hearing. [Cr. Dkt. No. 77 at 9]. Specifically, he avers that counsel should have elicited that the woman identified as Miranda was not a co-conspirator; that Miranda was Roman's girlfriend; that Miranda gave him a cell phone which was inactive; and that the cell phone was never activated. [*Id*.]. After eliciting these facts, Roman contends that counsel should have subpoenaed cell phone records and, in so doing, could have demonstrated that the cell phone was not activated. [*Id*. at 9-10]. According to Roman, the cell phone records would have demonstrated that he was being truthful during the safety-valve interview. [*Id*.].

As a threshold matter, the outcome in this case could only change if the Court determined that Roman qualified for safety-valve. Otherwise, Roman is subject to the statutory minimum sentence of 120 months, exactly the sentence he received. The issues raised by Roman pertain to the resentencing hearing, the purpose of which was to determine Roman's truthfulness during the safety-valve debriefing. In this regard, the Court considers the testimony as a whole, rather than

each statement in isolation.

Agent Hardwich stated that, during the initial interview, Roman explained that he was given cell phones to communicate with co-conspirators, [*Id*. at 9], and also identified a woman named Miranda as a co-conspirator who gave him one of the cell phones in person. [*Id*. at 12]. Agent Hardwich also stated that during the safety valve debriefing, Roman would not provide any further details about Miranda. [*Id*. at 12]. Thereafter, Roman testified that he told agents he did not want to talk about Miranda, claiming that she was a potential girlfriend. [*Id*. at 25]. After hearing all the testimony presented, the Court determined that Roman was not completely truthful at his safety-valve debriefing:

> [M]r. Roman does admit that he refused to discuss anything regarding Miranda . . . . Agent Hardwich has testified that at the time of the initial interview, Mr. Roman indicated that Miranda had given him the telephone in order to contact the other conspirators involved here. That to the [C]ourt would certainly indicate that he was being less than truthful at the time of the safety-valve interview when he is questioned further about Miranda . . . . [H]e admits that he wouldn't discuss anything regarding Miranda. Of course now he is saying that he wouldn't do so because of the fact that this was a potential girlfriend . . . . [T]he [C]ourt does find that Mr. Roman was in fact not completely truthful at the time of the safety-valve interview, so will deny the request for safety valve.

[*Id*. at 29-30]. Contrary to Roman's contention, evidence that the cell phone was not activated would not affect the Court's conclusion that Roman was not truthful because after initially identifying her as a co-conspirator, he now claimed she was a potential girlfriend.[2] Indeed, evidence that the cell phone was not activated would not overcome the Court's finding that Roman was lying when he claimed that Miranda was his girlfriend.

Roman also complains that his counsel failed to present exculpatory or mitigating evidence that the cell phone given to him by Miranda was not activiated. [Dkt. No. 2 at 8-9]. Contrary to Roman's claim, this evidence was elicited from Roman himself. [Dkt. No. 77 at 22].

---

[2] "I was starting to date her, yes." [Cr. Dkt. No. 77 at 22].

However, this evidence was contradicted by Agent Hardwich, as he testified that during the safety-valve debriefing Roman was shown the phones which were turned on.  [*Id*. at 19].

However, even if the Court had believed Roman's claim that the phone given to him by Miranda was not activated, the Court simply did not believe that Miranda was a girlfriend rather than a co-conspirator.  Further, the decision to present evidence about the cell phone given to him by Miranda through Roman's testimony is consistent with reasonable professional judgment presumed under *Strickland*.  *Strickland*, 466 U.S. at 689-90.  Such is precisely the type of strategic decision that commands deference from a reviewing habeas court.  *See United States v. Webster*, 392 F.3d 787, 794 n.11 (5th Cir. 2004) (citing *Kitchens. v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1998) ("Did counsel investigate enough?  Did counsel present enough mitigating evidence?  Those questions are even less susceptible to judicial second-guessing")).

For these reasons, the Court finds that Roman has failed to demonstrate prejudice in counsel's failure to investigate and/or present additional evidence.  The Court finds that defense counsel made a reasonable strategic decision by not conducting further investigation into Miranda's participation in the conspiracy.

### 2. Failure to Impeach Testimony of Government Witness and Object to Misleading Testimony

Next, Roman argues that his counsel was ineffective during the resentencing hearing for failing to impeach the testimony of Agent Hardwich.  [Cr. Dkt. No. 77 at 11].  Specifically, Roman argues that Agent Hardwich offered inconsistent testimony regarding Roman's failure to answer questions, during the safety-valve debriefing, about the woman he identified as Miranda. [Dkt. No. 2 at 12].  Roman directs the Court to two statements offered by Agent Hardwich: first, Agent Hardwich testified that Roman "made an excited utterance [and] he basically clammed up[,]" and, second, he testified that "[Roman] became nervous and clammed up and that was the

End (sic) of the interview." [Cr. Dkt. No. 77 at 9, 18; Dkt. No. 2 at 11-12].

Roman also asserts that Agent Hardwich provided inconsistent statements regarding the manner in which Roman effectively ended the safety-valve debriefing. [Dkt. No. 2 at 12]. Initially, Agent Hardwich stated that, *at the initial interview*, Roman told him he no longer wanted to cooperate. [Cr. Dkt. No. 77 at 18]. Later, Agent Hardwich stated that, *during the safety-valve debriefing*, Roman gave a nonverbal indication that he did not want to continue the interview. [*Id*. at 21]. A thorough review of the record reflects that Agent Hardwich did not provide inconsistent statements as to either Roman's failure to answer questions or the manner in which he ended the interviews. Accordingly, counsel could not be ineffective for failing to impeach Agent Hardwich.

Next, Roman argues that he suffered ineffective assistance because counsel failed to object to Agent Hardwich's testimony that "Miranda was a member of the conspiracy" and claims "[counsel] allowed the statement by Agent Hardwich that Miranda was a member of the drug conspiracy to go unchallenged." [Dkt. No. 2. at 15-16]. However, as noted, Agent Hardwich testified that Roman initially identified Miranda as a member of the conspiracy. Roman's statement was reflected in Agent Hardwich's notes, taken at the initial interview. Roman did deny that at the subsequent debriefing, but the Court was entitled to consider the original admission. Accordingly, the Court does not deem counsel's conduct to be objectively unreasonable in the face of Agent Hardwich's testimony concerning Miranda.

Roman also fails to demonstrate how the failure to object to statements about Miranda's involvement in the conspiracy prejudiced him during the resentencing hearing. Roman summarily states that statements made about Miranda somehow misled the Court in determining his truthfulness at the initial debriefing, a prerequisite to the safety valve debriefing reduction.

The Court considered all the evidence concerning the testimony at the safety valve debriefing, including Miranda and the cell phones, during its resentencing and found Roman not to be truthful. [*Id.* at 31-32]. Consequently, Roman cannot show prejudice and his claim as to this issue is also devoid of merit.

### 3. Whether Cumulative Errors and Omissions Led to Deprivation of Due Process

Roman next claims that the cumulative effect of the alleged errors and omissions discussed above amount to a showing of ineffective assistance and therefore a deprivation of due process. In support, Roman directs the Court to *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004). His reliance on *Grammas* is misguided, however. In that case, a petitioner demonstrated that he received ineffective assistance of counsel because he was not informed of implications in entering into a plea agreement and the petitioner's counsel was not familiar with the United States Sentencing Guidelines. *Id.* at 436-37. As discussed above, all of Roman's claims are baseless. Several baseless arguments do not coalesce into a valid one. Indeed, "clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520-21 (5th Cir. 2006); *see Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000).

## III. CONCLUSION

Based on the foregoing reasons, Roman's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**. Additionally,

should Roman seek one, a certificate of appealability is **DENIED**. Final judgment shall issue under separate order.

    IT IS SO ORDERED.

    SIGNED this 21st day of December, 2009, in Laredo, TX.

                                                            _____
                                                             Micaela Alvarez
                                                    UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**